**DAVIS v. DOWLEN et al.**

No. 3469.

Court of Civil Appeals of Texas. Beaumont.

Dec. 27, 1939.

Rehearing Denied Jan. 10, 1940.

B. C. Johnson, of Port Arthur, and David E. O'Fiel, of Beaumont, for plaintiffs in error.

Orgain, Carroll & Bell and Strong, Moore & Strong, all of Beaumont, Donald Campbell and Leslie A. Thompson, Jr., both of Tulsa, Okl., and A. W. Bounds and Winston McMahon, both of Houston, for defendant in error.

O'QUINN, Justice.

This is a suit in trespass to try title. Annie V. Davis, joined by her husband, Olin Davis, and other parties, as plaintiffs, sued P. A. Dowlen and Mrs. Ida. L. Keith in her individual capacity, as well as independent executrix of the estate of her deceased husband, John L. Keith, as defendants, to recover title and possession of 10 acres of land, a part of lot or subdivision No. 10 of the west half of the H. Williams league of land in Jefferson County, Texas.

The defendants answered by general demurrer, general denial, plea of not guilty, and specially the 3, 5, 10 and 25 year statutes of limitation. Vernon's Ann.Civ.St. arts. 5507, 5509, 5510, 5519. Defendants then by cross action sued the plaintiffs for the title and possession of the 10 acres of land described in the plaintiffs' petition, asserting title to same by virtue of the 3, 5, 10, and 25 year statutes of limitation.

The Stanolind Oil and Gas Company with permission of the court intervened asserting that it had an interest in the property involved, and for cause and right to intervene alleged that it was the holder of an oil, gas and mineral lease duly executed by defendants P. A. Dowlen and Mrs. Ida L. Keith, individually and as Executrix of the estate of her deceased husband, John L. Keith, which said lease covered the 10 acres of land described in the plaintiffs' petition, which lease was a valid, subsisting lease in full force and effect, and answered plaintiffs' suit by general demurrer, general denial, plea of not guilty, and specially that plaintiffs' right to recover was barred by the 3, 5, 10, and 25 year statutes of limitation.

Trial was had to a jury upon special issues, upon the answer to which judgment was entered for defendants for the title and possession of the land. Motion for a new trial was overruled, and plaintiffs have appealed the case to this court by writ of error.

We shall refer to the plaintiffs in error as plaintiffs, and to the defendants in error as defendants, that being their attitude in the trial court.

The record discloses that the H. Williams league of land in Jefferson County had been divided into halves, and that the west half was subdivided into lots or blocks, numbered, the 10 acres here involved being situated in the northwest corner of block 10. Lot or block No. 9 was situated north

of and adjoining lot or block No. 10. A tract of 47½ acres, part of lot 10, extended along the north line of lot 10, and the 10 acres here involved was off of the west end of the 47½ acres, being in the northwest corner of lot 10.

All parties agreed that J. P. Armstrong was the common source of title. He acquired title to the 10 acres by warranty deed executed to him by Rufus D. Kent January 30, 1899, said deed covering and conveying to him all of blocks 9 and 10 of the Grigsby partition of the west one-half of the H. Williams league survey. On April 16, 1901, J. P. Armstrong conveyed to B. Milmo the north 47½ acres of block 10, and April 25, 1901, Milmo conveyed to H. G. Bury, Trustee, the west 10 acres of said 47½ acre tract. Plaintiffs claim to hold the title to this 10 acres, and all parties admit that this is the 10 acres here in controversy. It is admitted that the remainder of the 47½ acre tract passed from Milmo by regular chain of title into John L. Keith, in fact it is admitted that title to the remainder of block 10 and all of block 9 passed by regular chain of conveyances into John L. Keith, the 10 acres first above mentioned being the only land in blocks 9 and 10 in dispute.

On February 6, 1904, J. P. Armstrong, by sheriff, executed to H. T. Staiti a deed purporting to cover, among other property, all of blocks 9 and 10, except the 47½ acres sold by Armstrong April 16, 1901, to B. Milmo. June 8, 1904, Staiti conveyed to John L. Keith by special warranty deed all the land that he had acquired under the sheriff's deed, being all of blocks 9 and 10, except the 47½ acres off of the north side of block 10. December 29, 1905, J. P. Armstrong executed to John L. Keith a deed covering all of his interest in blocks 9 and 10 including the 10 acres in controversy, and on December 12, 1906, John L. Keith conveyed to P. A. Dowlen by special warranty deed an undivided one-half interest in all of blocks 9 and 10 of the west half of the said Grigsby partition of the west half of the H. Williams league survey. Thereafter John L. Keith and P. A. Dowlen each claimed an undivided one-half interest in all of blocks 9 and 10, including the 10 acres in question, and together they claimed the entire title to all of said blocks 9 and 10.

John L. Keith died leaving a will which named his widow, Ida L. Keith, Independent Executrix and sole devisee, which will was duly probated. Subsequently, on October 1, 1932, Ida L. Keith joined with P. A. Dowlen in executing to G. J. Lee a mineral lease covering all of blocks 9 and 10, and title to this lease passed by regular transfers into Intervener, Stanolind Oil and Gas Company.

As before stated, plaintiffs brought this suit in trespass to try title to the 10 acres, in the northwest corner of block 10, against defendants, Dowlen and Keith. This suit was filed on June 9, 1936. June 29, 1936, Dowlen, who was a lawyer, filed answer for himself and Mrs. Keith, which consisted of a general demurrer, general denial, pleas of not guilty, and the 3, 5, 10, and 25 year statutes of limitation. The court submitted six special issues to the jury. The first inquired whether defendant P. A. Dowlen had matured title to an undivided one-half of the land in controversy under the five year statute of limitation, which was answered "Yes"; the second whether defendant Mrs. Ida L. Keith had matured title to an undivided one-half of the land in controversy under the five year statute of limitation, which was answered "Yes"; the third whether defendant P. A. Dowlen had matured title to an undivided one-half of the land in controversy under the ten year statute of limitation, which was answered "Yes"; the fourth whether defendant Mrs. Ida L. Keith had matured title to an undivided one-half of the land in controversy under the ten year statute of limitation, which was answered "Yes"; the fifth whether defendant P. A. Dowlen had matured title to an undivided one-half of the land in controversy under the twenty-five year statute of limitation, which was answered "Yes"; and sixth whether defendant Mrs. Ida L. Keith had matured title to an undivided one-half of the land in controversy under the twenty-five year statute of limitation, which was answered "Yes." Each of the special issues was submitted in proper form.

■ All assignments of error that the court erred in refusing to grant plaintiffs' motion for an instructed verdict because of the insufficiency of the evidence to support title in the defendants by limitation are overruled. The record abounds in proof supporting each claim.

■■ We overrule plaintiffs' contention that the court erred in permitting Dowlen to testify that Keith claimed an undivided one-half of the 10 acres, and that he, Dowlen, as claimant of the other undivided one-

half, recognized such claim of Keith. It is contended by plaintiffs that such testimony was inadmissible because prohibited by Article 3716, R.S.1925. Said article reads: "In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

We think the statute has no application to the case because the defendant Dowlen was not an heir of John L. Keith, deceased, and the testimony given by him was not as to a transaction with John L. Keith within the meaning of the statute, nor was there a controversy between Dowlen and Mrs. Ida L. Keith either in her personal capacity or as Independent Executrix of the estate of her deceased husband, John L. Keith. Humphreys v. Green, Tex.Civ.App., 271 S. W. 116, writ dismissed. Dowlen's testimony that he claimed an undivided one-half interest in the land in controversy; that he recognized John L. Keith as the owner of the other half, and after Keith's death that he recognized his widow Mrs. Ida L. Keith as the owner of same; that he, Dowlen, held possession of, and exercised control and management of the land for himself and Keith, as equal owners; that after acquisition of the land he and Keith paid the delinquent taxes due on the land; that W. A. Decker paid to Dowlen rent on the land annually as provided in a contract between Decker and Keith and Dowlen; and that after acquiring the undivided one-half interest in the land, he and Keith had the land surveyed and built fences enclosing same, was certainly admissible. Plaintiffs prepared and requested the court to give to the jury a special charge that they should not consider any evidence going to show that Dowlen was claiming the land for the benefit of John L. Keith, or the heirs of John L. Keith. This was correctly refused. He and Keith being owners of the land in equal halves, and so joint tenants, and Dowlen having the exercise of possession and management of the whole for their joint benefit, he was competent to so testify and the testimony was competent and admissible to prove these facts. The whole

purpose of the testimony was to show that Dowlen, who managed the land, claimed only an undivided one-half interest in same, and that he recognized Keith's title to the other half, and after his death he recognized his sole legatee, Mrs. Ida L. Keith, as the owner of the Keith half. He was not a party to an action by or against an executor in the sense contemplated by Article 3716, there being no controversy between him and Mrs. Keith, the executrix of her deceased husband's estate.

But plaintiffs insist that "the court erred in permitting defendants, over plaintiffs' objections, to introduce any evidence of their title or claim to the land in controversy, plaintiffs having duly demanded the filing of an abstract of their title as provided by law, and such abstract not being so filed." Under this assignment it is contended that defendants, in the absence of complying with the demand for an abstract of their title, could not offer any evidence, documentary or oral, of their title or claim to the land. This contention is not sound.

The statutes covering the right of one party to demand an abstract of title of the opposite party, what the abstract of title shall contain, and the circumstances under which same shall be filed, are as follows:

"Article 7376. After answer filed, either party may, by notice in writing, duly served on the opposite party or his attorney of record, not less than ten days before the trial of the cause, demand an abstract in writing of the claim or title to the premises in question upon which he relies."

"Article 7377. Such abstract of title shall be filed with the papers of the cause within twenty days after service of the notice, or within such further time as the court on good cause shown may grant; and, in default thereof, no evidence of the claim or title of such opposite party shall be given on the trial."

"Article 7378. The abstract mentioned in the two preceding articles shall state:

"1. The nature of each document or written instrument intended to be used as evidence and its date; or

"2. If a contract or conveyance, its date, the parties thereto and the date of the proof of acknowledgment, and before what officer the same was made; and,

"3. Where recorded, stating the book and page of the record.

"4. If not recorded in the county when the trial is had, copies of such instrument,

with the names of the subscribing witnesses, shall be included.

"If such unrecorded instrument be lost or destroyed, it shall be sufficient to state the nature of such instrument and its loss or destruction."

"Article 7379. The court may allow either party to file an amended abstract of title, under the same rules which authorize the amendment of pleadings so far as they are applicable; but in all cases the documentary evidence of title shall at the trial be confined to the matters contained in the abstract of title."

■ We think that the foregoing statutes have but one purpose, that is to give to either party in a trespass to try title suit an opportunity to know what *documentary evidence* the opposite party expects to rely upon to support the title he seeks affirmatively to recover. This for the purpose of affording the party demanding the abstract full opportunity to meet any affirmative title presented on the trial by the opposite party. If plaintiffs' theory be correct, then when a demand is timely made for an abstract of title and the party upon whom the demand is made fails *literally* to comply with the demand within twenty days, he forfeits all rights to defend the suit and thus loses his property without more ado. In other words, if plaintiffs' insistence be correct when the twenty days have expired and no abstract has been filed, the law suit then ends, and the losing party is without any remedy to protect his rights no matter how clearly he may be entitled to protection by proving his ownership of the premises in contest. We think the purpose of the statute, clearly, is to preserve and protect, and not to take away or to destroy; to help the cause of justice and fairness in litigation, not to pervert or hinder it. It could not have been the intent of the legislature to lay down an iron-clad rule that unless an abstract of title is filed within twenty days after demand, that such failure completely and forever bars even the consideration by our courts of the title, however acquired, of the party who so failed, and who, conceivably, might have all of the equities on his side. The legislature could not have intended to lay down such a rule without vesting in some human agency the power to use discretion in enforcing the rule under consideration. That courts have this discretion is clearly manifest in Article 7377. It is there provided that "Such abstract of title shall be filed with the papers of the cause within twenty days after the service of the notice, *or within such further time as the court on good cause shown may grant;* and, in default thereof, no evidence of the claim or title of such opposite party shall be given on the trial." (Italics ours.) The granting of further time in which to file the abstract is thus plainly authorized, and whether good cause for the delay has been shown is left to the discretion of the court. Here defendants asked the court for further time, and it was granted, and the abstract thereafter promptly filed. It must be presumed that the court gave consideration to all the facts and circumstances relating to the granting of further time, and that he found that good cause had been shown. Though the demand for the abstract was made on February 1, 1937, and no abstract was filed until October 16, 1937, no injury to plaintiffs is made to appear. The case was not tried until December 1, 1937, some six weeks after the abstract was filed, thus affording plaintiffs ample time in which to inspect and investigate each of the documents there listed. No complaint is made to the contrary by plaintiffs.

■ Furthermore, the instruments (two deeds, one from Armstrong, the agreed common source, to Keith, and one from Keith to Dowlen) were not offered by defendants as muniments of title in themselves, but as evidence going to show title acquired by limitation—as evidence supporting the plea of limitation. It is not believed that the statute authorizing a demand for an abstract of title has application to evidence of any nature going to support pleas of limitation as a defense to defeat the opponent's title. Wolf v. Wilheim, Tex.Civ.App., 146 S.W. 216–219, writ denied; Davis v. Cisneros, Tex.Civ.App., 220 S.W. 298, writ dismissed; Hays v. Hinkle, Tex.Civ.App., 193 S.W. 153, writ refused; Stokes v. Riley, 29 Tex.Civ.App., 373, 68 S.W. 703, 704. We shall quote from but one of the cases cited: In Davis v. Cisneros, supra, the court says [220 S.W. 299]: "The instrument was not offered as a muniment of title, but as a circumstance to consider with other testimony in connection with the adverse claim of use and occupation under a limitation title, and was admissible for that purpose." In the instant case the whole defense was based on the several statutes of limitation. The evidence offered by defendants was in support of the limitation claim. The

only issues submitted on the trial were of limitation. These were all answered in favor of defendants. There is abundant evidence in the record to support each of the findings. Moreover, the issue of ten year limitation was submitted without reference to any muniment of title, there being only 10 acres of land involved, adverse holding under muniment of title was not involved, and the issue was submitted simply on adverse peaceable possession, and use and enjoyment of the land for ten consecutive years before the filing of the suit. The finding of this issue, alone, supports the judgment. Further, in the original answer of defendants filed before the demand for an abstract of title was made, title by limitation under the several statutes was specially plead, and so plaintiffs then and all through the progress of the case were advised that the defense of limitation was relied upon to defeat plaintiffs' title.

We overrule plaintiffs' assignments that the court erred in the manner of his submission to the jury of the several pleas of limitation, over their objections, the contention being that the special issues submitting the limitation pleas were multifarious for in that said issues submitted the questions of possession, whether the possession was adverse, the payment of taxes, and use and enjoyment of the premises all in one issue, whereas they should have been submitted separately. The six special issues herein heretofore referred to were submitted in the language of the respective statutes of 5, 10, and 25 year limitation. The issues were not multifarious. It required all of the elements mentioned in the court's charge to compose the one ultimate fact issue. All of them must have coexisted and run concurrently for the time required to have matured title. Reed v. Magnolia Petroleum Co., Tex.Civ.App., 57 S.W.2d 359, writ dismissed; White v. Haynes, Tex.Civ.App., 60 S.W.2d 275, writ dismissed; Rotge v. Dunlap, Tex.Civ.App., 91 S.W.2d 905. In this last case cited, writ was granted, but on another point, and was later dismissed by agreement. Consolidated Casualty Ins. Co. v. Fortenberry, Tex.Civ.App., 103 S.W.2d 1049, 1050, writ refused. In the last cited case Judge Higgins says: "The grouping of facts in a single issue as distinguished from the grouping of distinct ultimate issues, is permissible."

Other assignments are presented, all of them have been considered, and none of them showing reversible error, are all overruled.

The judgment should be affirmed, and it is so ordered. Affirmed.